Green, J.
delivered the opinion of the courti
In this case the question is presented whether, under and by virtue of the provisions of the second section of the act of limitations of 1819, a complete title is acquired by the possessor whoa has been in possession without interruption for seven years.
This court decided, in the cáse of Dyche vs. Gass, 3 Yerger, 397, and in several subsequent cases, that a naked trespasser, who may have taken and held possession of the land 'of another for seven years without any color or pretence of right, is protected in that possession by the second section of the act of 1819. It is now insisted, and the circuit court so decided, that such possessor is not only protected in the possession, but that he has acquired a complete legal title t'o the land.
We cannot safely rely for the exposition of this statute Upon the decisions in England upon statutes in which language similar to that employed in this second section is used. Although by the statute 21 Jas. I, ch. 16, a possession of land for twenty years took away the right of entry of the true owner, it did not destroy his title nor vest in the possessor a fee simple. He might still assert his claim by bringing a writ of right. It is true that one who had been in possession for twenty years might have been permitted to assert his right of possession, even against the true owner, in an action of *449 ejectment, because such possession is like a descent which tolls entry and gives a right of possession, which is sufficient to maintain ejectment. Salk. 421: 1 Ld. Ray. 741: Angel on Lim. 40. But it does not follow that such a consequence could result in this State from a seven years naked possession, because the analogy is not complete. The writ of right is not in use in this country; so that if the true owner were turned out by an action of ejectment it must be because his title is extinguished by force of the seven years possession, and by the operation of the second section of the act of 1819 is transferred to and vested absolutely in the possessor. This would be giving to this second section of our act a potency far beyond that which has ever been ascribed to the statute of James I. But if this were not so we could not safely ascribe to our legislature the meaning, although their language is similar, which the English courts understood to be that of the British parliament. Our legislature had before them the history of the statute of limitations in North Carolina and in this State. They knew what construction had been put by the^courts upon the acts of 1715 and 1797, and the struggles wííich had been made at the bar and on the bench to establish other views than those that had prevailed. With all these facts before them the first section of the act of 1819 was framed, and then the section under consideration was enacted.
With all these facts before us, surely nothing could be more delusive than to adopt the construction which was put on the statute of James as our guide, nor more absurd'than to abandon the clearer lights which are afforded' by the history of our own legislature. Although the act of 1715 did not by its language require a possessor to hold by any paper title in order to his protection, yet as the legislature (act of 1715, ch. 38) had declared that no conveyance for land should be good in law unless proved and registered, and that all deeds so done should be valid to pass estates in land without livery of seizin, attornment, or other ceremony in the law, the courts refused to extend the benefits of the statute of limitations to any person except such as held possession under some paper title, constituting what was called “color of title.’’
*450 Much debate and difficulty arose in the courts as to what • would be sufficient to constitute color of title. To remove all doubt upon this subject the legislature passed the act of 1797, in which they declared that a party who should hold possession of land for seven years by virtue of a grant or deed of conveyance founded on a grant, should be entitled to hold the same against all persons whatsoever. A dispute arose in the construction of this act as to the meaning of the words “deed of conveyance founded upon a grant.” This produced the act of 1819, ch. 28. The first section of this act declares that a party who may have had seven years possession of land which has been granted, “claiming the same by virtue of a deed, devise, grant or other assurance purporting to convey an estate in fee simple, shall be entitled to hold the same against all other persons,” and should “have a good and indefeisible title in fee simple in such lands.” This section is drawn with much precision and care. In order that a party shall be protected who has held possession of land for seven years, he must claim the same by some assurance which purports to convey anótate in fee simple. In such case it not only protects his possession, but in express words it confers on him the title. “He shall have a good and indefeisible title in fee simple.” Now can it be believed that' the eminent lawyer who drew this act would have been so precise in his language as to the character of the estate under which a party must hold, or that he would have used express words to confer the title on the possessor, if he had intended that the same consequence should result from the provisions of the jsecond section? or can we, without charging the legislature with folly, suppose that they intended these two sections should mean the same thing? In construing an act of the legislature we must arrive, if we can, at the meaning of those who made it. The particular meaning of the words as used in a given case is very often to be ascertained by reference to the connection in which they are used; and taking the second section of this act in connection with the first, there can be no doubt but that the framers of it intended to give to a possession, by virtue of an assurance purporting to convey an estate in fee simple, a benefit which *451 was not conferred upon a naked trespasser. But the natural import of the language of the second section simply bars the remedy, but does not take away the right. It enacts that “no person or persons, or their heirs, shall have, sue or maintain any action or suit, either in law or equity, for any lands, tenements or hereditaments but within seven years next after his, her or their right to commence, have or maintain such suit shall have come, fallen or accrued.” But there are no words that take away the right or confer the title on the possessor; nor does such consequence result necessarily from the prohibition to sue. _ If such effect be given to the second section it must be by construction, and not because it is the natural import of the language. But we cannot so construe it, because we are expressly told in the preceding section that this effect is to .be given to a particular class of cases there enumerated. Certainly, therefore, when in relation to other cases language wholly different is used, we are not to understand it as meaning the same thing.
To effect the intention of the legislature courts sometimes construe the language of a statute to mean a very different, thing from that which it naturally imports; but here the legislature evidently intended that which the words naturally mean: for if the argument for the defendant in error be correct there is certainly nothing in' the first section which is not embraced in the second. But to assume this is to * chaise the legislature with folly; with the double folly of embracing in the second section all the provisions of the first, and still retaining in the act that useless section; and this too, by the use of far less appropriate language than that they had previously employed.
The second section of this act, in other respects, is very broad in its provisions; and if the construction contended for was put upon it it would be most mischievous in its consequences. We think, therefore, that to extend its provisions beyond their plain import would be alike destructive of the interests of the country and subversive of the intention of the framers.
The charge of the court, therefore, that “if Berry was in possession seven years of the lots in dispute, holding adverse- *452 Iy and for iiiraseli, he gained a fee simple,” is erroneous. A party who has thus held possession has acquired a right of possession, but not the title. We do not say an execution may not be levied on land thus held. But in this case Berry had abandoned the possession, and .the land was occupied-by another before this judgment was obtained. Berry had only a right of possession, which he had transferred to White before the judgment in the record was obtained, so as to create alien upon his right, if indeed a lien would exist in such case. It is therefore not like the case of Rochell vs. Benson, Meigs, 3. In that case the land was transferred and the possession was changed after the lien of the judgment had attached.
Let the judgment be reversed and the cause remanded for another trial.